IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Sheila Stephens,<br><br>                     Plaintiff,<br><br>vs.<br><br>Carolyn W. Colvin, Acting<br>Commissioner of Social Security,<br><br>                    Defendant. | Civil Action No. 6:15-3715-RMG-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This case is before the court for a report and recommendation pursuant to Local Civ. Rule 73.02(B)(2)(a) (D.S.C.), concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).

The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. 405(g)) to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits under Title II of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

The plaintiff filed an application for disability insurance benefits ("DIB") on September 27, 2011, alleging that she became unable to work on August 23, 2011. The application was denied initially and on reconsideration by the Social Security Administration. On August 28, 2012, the plaintiff requested a hearing. The administrative law judge ("ALJ"), before whom the plaintiff and William W. Stewart, Ph.D., an impartial vocational expert, appeared at a hearing on March 12, 2014, considered the case *de novo* and, on April 4, 2014, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The ALJ's finding became the final decision of the Commissioner of Social

Security when the Appeals Council denied the plaintiff's request for review on July 23, 2015. The plaintiff then filed this action for judicial review.

In making the determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.
>
> (2) The claimant has not engaged in substantial gainful activity since August 23, 2011, the alleged onset date (20 C.F.R. § 404.1571 *et seq*).
>
> (3) The claimant had the following severe impairments: obesity, status post open reduction internal fixation of the right ankle, left femur fracture status post IM rod placement, left ulna and radial fracture status post open reduction internal fixation (20 C.F.R. § 404.1520(c)).
>
> (4) The claimant also has the following non-severe impairment: mild chronic obstructive pulmonary disease (COPD)(20 C.F.R. 404.1521 and 416.921).
>
> (5) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).
>
> (6) After careful consideration of the entire record, I find that, the claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b). In particular, the claimant can lift or carry up to 20 pounds occasionally and 10 pounds frequently. She can stand or walk for approximately 6 hours of an 8-hour workday and sit for approximately 6 hours of an 8-hour workday with normal breaks. However, the claimant is limited to frequent pushing and pulling with her left upper extremity and right lower extremity and must not climb ladders, ropes, or scaffolds. She is limited to frequent balancing, occasional climbing of ramps and stairs, occasional stooping, kneeling, crouching, and crawling, and she must avoid concentrated exposure to hazards.
>
> (7) The claimant is capable of performing past relevant work as a cake decorator/caterer helper, customer service representative, sales associate, cashier, cash office clerk. This work did not require the performance fo work-related activities

>precluded by the claimant's residual functional capacity (20 C.F.R. § 404.1565).
>
>(8) The claimant has not been under a disability, as defined in the Social Security Act, from August 23, 2011, through the date of this decision (20 C.F.R. § 404.1520(f)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as:

>the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment that prevents past relevant work, and (5) has an impairment that prevents him from doing substantial gainful employment. 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* § 404.1520(a)(4).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually

performed the work. SSR 82–62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments that prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citation omitted).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings and that the conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there

is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **EVIDENCE PRESENTED**

On September 10, 2008, three years before her alleged onset of disability, the plaintiff was injured in a motor vehicle accident, fracturing her left femur, her left radius and ulna, left third metcarpal, and her right ankle. She sustained acute multiple chest and abdominal contusions, right thigh hematoma, and questionable left acetabular fracture. She was stabilized and taken by helicopter to another hospital (Tr. 243-87). On September 11, 2008, the plaintiff underwent open reduction and internal fixation ("ORIF") surgery of the left femur with rod placement, ORIF of the right ankle, repair of the left quadriceps tendon, and ORIF of the left ulna and radius (Tr. 333, 337). Following her surgery, the plaintiff was transferred for rehabilitation from September 19, 2008, through October 10, 2008 (Tr. 290-328). The plaintiff also required revision surgery to her left arm. (Tr. 369-74, 379, 384-87). She received home health care through February 4, 2009 (Tr. 420-517), and appropriate orthopedic followup care thereafter (Tr. 289-328).

On December 23, 2008, an x-ray of the plaintiff's left femur showed that the fracture appeared to have healed satisfactorily with no apparent complications (Tr. 380). X-rays of the plaintiff's left forearm showed stable postoperative changes with no apparent complications (Tr. 371).

On February 3, 2009, x-rays of the plaintiff's right ankle, left elbow, left forearm, and left knee showed satisfactory alignment without complications (Tr. 375-78). On that date, the plaintiff reported that, overall, she was doing well with pain control (Tr. 398).

On May 14, 2009, the plaintiff was able to ambulate independently with a cane, and she reported that she was able to perform all activities of daily living without assistance (Tr. 535).

On June 29, 2009, the plaintiff reported that she was basically asymptomatic, and she was able to walk a couple of miles without having any problems. The plaintiff also reported that she had gained range of motion in her left upper extremity. Michael C. Tucker, M.D., reported that "[c]linically the patient is doing quite well." Dr. Tucker released the plaintiff to return to work and advised her to follow up on an as-needed basis (Tr. 554).

On May 24, 2011, the plaintiff presented to William Davis, M.D., her primary care physician, for a followup appointment and stated that she had been out of her medications for two weeks. However, she reported that her pain was "stable" and not worsening (Tr. 635).

On August 23, 2011, the plaintiff's alleged onset of disability date, the plaintiff saw Dr. Davis for "multiple medical problems" and to talk to him about her medications (Tr. 633). His records are handwritten, sketchy, and partially illegible. The plaintiff reported being out of her medications for two weeks. Her blood pressure was 140/86, and her weight was 246 pounds. Dr. Davis's diagnoses included status post multiple traumas, gait abnormality, chronic pain, generalized anxiety disorder, depression, and hypertension. He noted that the plaintiff had been unable to work due to chronic pain, and he ordered a functional capacity evaluation. The plaintiff reported that her pain was stable and not worsening. A physical examination revealed that the plaintiff's range of motion in her extremities was normal, her cranial nerves were intact, and her back was normal (Tr. 633-34).

On September 16, 2011, the plaintiff presented for a functional capacity evaluation with John P. Zelenka, a registered occupational therapist ("OTR/L"), at Dr. Davis's request (Tr. 598). Mr. Zelenka noted the plaintiff's multiple injuries and surgeries in 2008 as well as her impairments of hypertension, chronic obstructive pulmonary disease ("COPD"), depression, balance limitations, and joint pain. Mr. Zelenka noted that the plaintiff demonstrated objective pain behaviors and weaknesses related to her lower

6

extremity discomfort areas (knees), right ankle, left femur, left forearm, and right rib cage. Mr. Zelenka reported that the plaintiff was not capable of performing the physical demands of her target job of "stock clerk," a medium exertion job, but that she was able to perform light work with a lifting range limitation from 36 to 72 inches on an occasional basis (Tr. 599, 603). Mr. Zelenka opined that the plaintiff could perform "static standing" for up to 1.5 hours a day; "dynamic standing" for up to 1.5 hours per day; walking for up to .5 hours per day; and sitting for up to 1/3 of the work day (2.6 hours), for a total of 6.1 hours (Tr. 600). Mr. Zelenka additionally opined that the plaintiff could never climb, balance, crawl, perform "low-level work," perform above-shoulder work, perform eye-hand-foot, or drive. He opined that she could only occasionally push and pull and only occasionally perform prolonged neck positioning, reach forward, handle, finger, pinch, and write. He opined that the plaintiff could frequently perform eye hand movements and had no significant limitations with regard to talking, hearing, or seeing (Tr. 598-630).

On September 27, 2011, Dr. Davis evaluated the plaintiff for her multiple medical problems. He noted her functional capacity evaluation. He listed numerous diagnoses including gait abnormality and indicated that the plaintiff was a candidate for disability (Tr. 631-32).

On October 27, 2011, Dr. Davis evaluated the plaintiff and indicated that she was essentially unchanged. The plaintiff had continued difficulty ambulating. Dr. Davis noted that the plaintiff was denied disability. He continued her medications (Tr. 680-81).

On November 17, 2011, Dr. Davis evaluated the plaintiff and noted that she was still having difficulty ambulating. He continued her current medications (Tr. 678-79).

On December 20, 2011, Dr. Davis evaluated the plaintiff for continued care of her multiple medical problems and prescription refills. He ordered blood work and continued her current medications (Tr. 676-77).

On February 3, 2012, Pravin Patel, M.D., performed a consultative physical examination. The plaintiff reported that she continued to have pain in her left forearm, right ankle, right femur, and lower back, and problems with stooping, climbing, lifting, and walking. She was followed by her family physician and took pain medication, which helped. The plaintiff reported that she returned to work for several years after her 2008 motor vehicle accident, but stopped working due to pain. The plaintiff reported trouble using her left hand and arm. Dr. Patel noted that the plaintiff had some physical therapy and a functional capacity evaluation. He indicated that she used hydrocodone and diclofenac, which "helps some." The plaintiff was noted to have histories of hypertension, occasional headache, high cholesterol, vitamin D deficiency, and acid reflux. Dr. Patel reviewed the plaintiff's surgical and social histories (Tr. 656--63).

A physical examination revealed that the plaintiff had no gross motor or sensory deficits, her deep tendon reflexes were normal, and she had fully intact strength in all four extremities (Tr. 659). The plaintiff was obese, and her cervical spine was nontender with full range of motion, her lumbar spine was minimally tender with slight reduction in range of motion, her left elbow had some minimal tenderness with some reduction in motion, and her left wrist, left knee, and right ankle had some decrease in range of motion. The plaintiff's shoulders, right elbow, right wrist, right knee, and left ankle were normal with full range of motion. The plaintiff's bilateral grip strength was 5/5, and her bilateral fine and gross manipulation were grossly intact. The plaintiff's gait was normal, with no disturbance noted. She was able to tandem walk and walk on her heels and toes, although she did so slowly. A straight leg raising test was negative in the sitting position. Dr. Patel noted no muscle weakness, loss of sensation, joint abnormality, muscle atrophy, or pathological reflexes. The plaintiff managed to get on and off of the examination table unassisted, and she could sit up from a supine position and stand up from a sitting position (Tr. 659-60). X-rays of the plaintiff's left knee showed that healing was not complete at the

distal femur fracture, but there was no evidence of hardware failure, and the knee joint was unremarkable (Tr. 664). X-rays of the plaintiff's lumbar spine showed no abnormalities (Tr. 666). X-rays of the plaintiff's left forearm showed some heterotopic ossification around the olecranon (the bony prominence of the elbow), but no evidence of hardware failure or loosening (Tr. 667). It was not noted what specific limitations of function would result from these problems.

Dr. Patel opined that the plaintiff could use public transportation without a companion. He opined that she could walk around the block on rough and uneven surfaces and walk up steps with a single handrail. He noted that the plaintiff could prepare simple meals, feed herself, and handle papers and files (Tr. 660). The plaintiff had no problems taking care of her personal hygiene, and she spent her day doing household chores (although she stopped doing them when she felt tired). The plaintiff occasionally went shopping (Tr. 657).

On March 8, 2012, a medical consultant on contract to the Administration completed a Physical Residual Functional Capacity ("RFC") Assessment indicating that the plaintiff was capable of performing medium work with postural and environmental limitations (Tr. 62-65). The same date, a Psychiatric Review Technique Questionnaire form was completed by a non-examining consultant on contract to the Administration. The form indicated that the plaintiff's medically determinable mental impairments were non-severe (Tr. 61).

On March 12, 2012, Dr. Davis completed a mental impairment questionnaire regarding the plaintiff at the Commissioner's request. Dr. Davis indicated that the plaintiff had generalized anxiety disorder and depression, which were treated with citalopram. He indicated that this medication helped the plaintiff's condition and that he had not recommended psychiatric treatment. Dr. Davis indicated that the plaintiff's mental status showed her to be appropriately oriented with intact thought process, appropriate thought

content, normal mood and affect, and good attention, concentration, and memory. He rated her work-related limitation in function due to her mental condition as "none" (Tr. 673).

On March 19, 2012, the plaintiff saw Dr. Davis for a followup appointment. The plaintiff reported that her symptoms were stable and not worsening. Dr. Davis reported that the plaintiff had normal range of motion in her extremities, and her back was normal. Dr. Davis noted that the plaintiff was applying for disability and he refilled her medications (Tr. 674-75).

On July 26, 2012, a medical consultant on contract to the Administration completed a Physical RFC Assessment indicating that the plaintiff was capable of performing medium work with postural and environmental limitations (Tr. 76-78). The same date, a Psychiatric Review Technique Questionnaire form was completed by a non-examining consultant on contract to the Administration indicating that the plaintiff's medically determinable mental impairments were non-severe (Tr. 73-74).

On January 22, 2013, Dr. Davis completed a "Medical Statement Regarding Physical Abilities and Limitations for Social Security Disability Claim" form. He opined that the plaintiff could work zero hours per day; stand for no more than 15 minutes at a time; stand zero hours in a workday; sit one hour in a workday; and lift no weight. He opined that the plaintiff could frequently perform bilateral fine manipulation and occasionally perform bilateral gross manipulation. He opined that the plaintiff could never bend, stoop, balance, raise her arms over her shoulders, work around dangerous equipment, operate a motor vehicle, and tolerate temperature extremes or pulmonary irritants. He opined that the plaintiff frequently needed to elevate her legs during an eight hour work day, and that her pain was "severe" (Tr. 689).

On June 26, 2013, the plaintiff presented as a new patient to CareSouth Carolina (Tr. 697). The plaintiff reported that she had constant left knee and left elbow pain from a car accident years before. She rated her pain at level four. A physical examination

revealed that the plaintiff's extremities were normal. The plaintiff was diagnosed with hypertension, hyperlipidemia, COPD, and chronic pain secondary to a motor vehicle accident with multiple fractures. She received a prescription for Norco (Tr. 696-97).

On July 29, 2013, the plaintiff presented to CareSouth for a followup appointment. The plaintiff complained of painful blisters on her feet that come and go as well as chronic pain. She received a refill of Norco and was started on amitriptyline (Tr. 694-95).

On July 30, 2013, a physician at CareSouth Carolina reviewed the plaintiff's blood work and note that her blood sugar was borderline. She was started on a diabetic diet and prescribed metformin (Tr. 695).

On November 5, 2013, the plaintiff presented to CareSouth for a followup appointment. A physical examination revealed that the plaintiff's extremities and back/neck were normal. The plaintiff reported increased sweating since starting metformin. Her blood pressure was 186/113. She was restarted on metoprolol and received refills of her other medications including Norco, diclofenac, and Lasix (Tr. 692-93). On December 10, 2013, a physician at CareSouth Carolina called in a prescription of amitriptyline for the plaintiff's complaints of restless legs (Tr. 693).

On February 27, 2014, the plaintiff presented to CareSouth for a followup appointment. The plaintiff complained of left knee pain of a level four, but had no other complaint. She was treated for hypertension and chronic pain. The plaintiff received a refill of Norco and an increased dose of Lisinopril (Tr. 690-91).

At the March 12, 2014, administrative hearing, the plaintiff testified that she was no longer able to work because she had gained weight in the three years prior to the hearing and had pain and swelling in her left leg, placing pressure on her low back when she walked (Tr. 42). The plaintiff testified that she took pain medications and anti-inflammatory medications and spent much of her day sitting in a recliner with her feet

11

raised waist-high (Tr. 43). She admitted that she was able to perform a wide range of daily activities including doing laundry twice a week, washing dishes, cooking meals, and vacuuming "in periodic measures" (Tr. 40). She was able to drive a car and drove herself to doctors' appointments and to her father's home on a regular basis. Additionally, she went grocery shopping about once a month. The plaintiff felt that she was capable of walking 50 yards; sitting for 15-20 minutes at one time; standing for 15-20 minutes at one time; lifting up to 25 pounds with her right hand; and lifting two to five pounds with her left hand (Tr. 41-42). She claimed that she had difficulty using her left hand for fingering or gripping objects (Tr. 44).

The ALJ asked the vocational expert to assume a hypothetical individual with the plaintiff's vocational characteristics who was limited to light work involving no more than frequent pushing and pulling with the bilateral lower extremities; frequent balancing; occasional climbing of ramps, stairs, stooping, kneeling, crouching, and crawling; no climbing of ladders, ropes, or scaffolds; and no concentrated exposure to hazards (Tr. 50). The vocational expert testified that the hypothetical individual would be capable of performing the plaintiff's past relevant work as a cake decorator/caterer helper as it is generally performed and her past relevant jobs as a customer service representative, sales associate, cashier, and cash office clerk both as they are generally and as they were actually performed (Tr. 50-52).

The ALJ's third hypothetical included the following limitations:

Lift and/or carry ten pounds occasionally, less than ten pounds frequently; stand and/or walk at least two hours in an eight-hour workday; sit about six hours in an eight-hour workday; left upper extremity pushing and pulling limited to frequent; right lower extremity pushing and pulling limited to frequent. Never climbing ladders, ropes, scaffolds; frequent balancing; occasionally climbing ramps, stairs, stooping, kneeling, crouching, crawling; handling and fingering of the left non-dominant hand limited to frequent with unlimited assistive

> use of right, dominant hand; avoid concentrated exposure to hazards.

(Tr. 52-53). The vocational expert indicated that this would still allow for the plaintiff's past relevant work as a customer service representative and a cash office clerk (Tr. 53). The ALJ also asked:

> And hypothetical number four, assume a hypothetical individual with the same vocational factors and impairments as in hypothetical number one, except that this individual is limited as stated in claimant's testimony, considering all testimony to be credible.

(Tr. 53). The vocational expert indicated that this would preclude all work. The plaintiff's attorney asked a hypothetical based on Exhibit 24F, the January 2013 "Medical Statement Regarding Physical Abilities and Limitations for Social Security Disability Claim" form from Dr. Davis in which he indicated that the plaintiff would need to "frequently elevate her legs during an 8-hour workday" about waist high. The vocational expert responded that this limitation would not allow any job (Tr. 53-54).

## **ANALYSIS**

The plaintiff was 45 years old on her alleged onset date of disability (August 23, 2011) and 47 years old on the date of the ALJ's decision (April 4, 2014) (Tr. 34). She has a high school education and past relevant work as a cake decorator/caterer helper, customer service representative, sales associate, cashier, machine operator, and cash office clerk (Tr. 37-39, 45-49). The plaintiff argues that the ALJ erred by (1) making a mistaken finding of fact with respect to the RFC findings; (2) failing to consider and resolve evidence in the RFC analysis concerning her need to use a cane; (3) failing to make a proper finding regarding credibility; and (4) failing to properly weigh opinion evidence.

***RFC***

The plaintiff first argues that the ALJ made a mistaken finding of fact in the RFC assessment and failed to consider evidence regarding her need to use a cane (doc. 16 at 11-21). Social Security Ruling ("SSR") 96-8p provides in pertinent part:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraph (b), (c), and (d) of 20 C.F.R. §§ 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional level of work, sedentary, light, medium, heavy and very heavy.

SSR 96-8p, 1996 WL 374184, at *1. The ruling further provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id.* at *7 (footnote omitted). Further, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.* Moreover, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.*

In making her RFC finding that the plaintiff could perform a limited range of light work[1], the ALJ noted the findings of Mr. Zelenka in the September 2011 functional capacity evaluation in which he found the plaintiff could perform "at levels consistent with light work, lifting up to twenty pounds, she could perform static standing and dynamic standing for thirty minutes at a time each, three times per day and walk a total of thirty minutes per day" (Tr. 20 (citing Tr. 600)).  The ALJ gave "this opinion and the objective testing great weight, as it was based on the claimant's abilities at that time, as thoroughly evaluated" (Tr. 20).  The ALJ found that Mr. Zelenka's findings were "consistent with diagnostic testing revealing no hardware failure in the claimant's right ankle, left femur, and left arm; . . . with the claimant's physical limitations revealing no gross sensory or motor deficits, only minimal tenderness, and a normal gait; . . . [and] with the claimant's daily activities . . . " (Tr. 20).  The ALJ stated that Mr. Zelenka's "evaluation clearly establishes that the claimant is capable of light work, which would be consistent with the claimant's past relevant work at both light and sedentary levels, as testified to by the vocational expert" (Tr. 20).  Further, in finding that the opinion of treating physician Dr. Davis was entitled to "little or no weight," the ALJ noted that Dr. Davis' findings were inconsistent with the functional capacity evaluation and that "Dr. Davis sent the claimant to the functional capacity evaluation and it was considered accurate and was the actual objective testing of the claimant's abilities" (Tr. 21), referring to Mr. Zelenka's evaluation of the plaintiff.

As argued by the plaintiff, Mr. Zelenka indicated that she showed a light cardiovascular fitness level and light work strength demand level (but with a lifting range limitation) (Tr. 599);  however, he outlined limitations that do not fit within the

---

[1]Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. *See* 20 C.F.R. § 404.1567.

Commissioner's definition of "light work" (Tr. 599-601). Specifically, Mr. Zelenka opined that the plaintiff's static standing was restricted to 30 minutes per occasion, three occasions per day, for a total of 90 minutes; dynamic standing was restricted to 30 minutes per occasion, three occasions per day, for a total of 90 minutes; walking was restricted to 15 minutes per occasion, two occasions per day, for a total of 30 minutes; and sitting was restricted to occasional, which was up to 1/3 of the day, that is, 160 minutes (Tr. 600). Accordingly, in total, Mr. Zelenka's limitations only allow for sitting, standing, and walking for 6.17 hours per day. As noted above, in the RFC assessment, the ALJ must consider an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis, which means eight hours a day, for five days a week, or an equivalent work schedule. *See* 96-8p, 1996 WL 374184, at *1. In giving the functional capacity evaluation "great weight," the ALJ did not mention or otherwise acknowledge that Mr. Zelenka found the plaintiff could not perform a total of eight hours of sitting, standing, and walking.

      The Commissioner argues that the ALJ did not state that she adopted Mr. Zelenka's findings in their entirety and further argues that the ALJ only gave great weight to certain portions of the evaluation (doc. 17 at 11 (citing Tr. 20)). The Commissioner argues that the RFC finding "reflect[s]" that the ALJ did not adopt Mr. Zelenka's opinion that the plaintiff could not perform a total of eight hours of sitting, standing, and walking; had a lifting range limitation from 36 to 72 inches; could not perform climbing of any type, balancing, crawling, low-level work, above shoulder work, or driving; and no more than occasional pushing, pulling, prolonged neck positioning, reaching forward, handling, fingering, pinching, and writing (doc. 17 at 11-12 (citing Tr. 600-601)). However, this is *post-hoc* rationalization not included in the decision. *See Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir.2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that

were not given by the ALJ."). The ALJ did not say that she was only adopting parts of Mr. Zelenka's opinion. Instead, she specifically stated that she was giving Mr. Zelenka's opinion and objective testing "great weight "(Tr. 20), and she discounted the opinion of the plaintiff's treating physician, at least in part, based on its inconsistency with the findings of Mr. Zelenka's functional capacity evaluation (Tr. 21).

Moreover, the ALJ's statement that Mr. Zelenka's "evaluation clearly establishes that the claimant is capable of light work, which would be consistent with the claimant's past relevant work at both light and sedentary levels, as testified to by the vocational expert" (Tr. 20), is in error as Mr. Zelenka's evaluation only allowed for sitting, standing, and walking for 6.17 hours per day and *occasional* fingering and handling (Tr. 600). The plaintiff's past jobs that the ALJ found she could still perform (cake decorator (*DICOT* 524.381-010, 1991 WL 674377); customer service representative (*DICOT* 299.367-010, 1991 WL 672630)[2]; sales associate (*DICOT* 290.477-014, 1991 WL 672554)[3]; cashier (*DICOT* 211.362-010, 1991 WL 671835)[4]; and cash office clerk (*DICOT* 216.482-010, 1991 WL 671933)) (Tr. 22-23)) require frequent fingering and handling (*see* doc. 16 at 16 (citing the *DICOT* and its companion publication, *Selected Characteristics of Occupations*)).

Based upon the foregoing, the undersigned cannot say the ALJ's RFC assessment is based upon substantial evidence as it appears to be based, at least in part, on a mistaken conclusion that Mr. Zelenka's functional capacity evaluation findings were consistent with a limited range of light work as defined by the Social Security Administration.

---

[2]The ALJ appears to have mistakenly listed the *Dictionary of Occupational Titles* ("*DICOT*") code for this position as 2*3*9.367-010 (Tr. 23; *see also* Tr. 49). The undersigned could find no such listed position in the *DICOT*.

[3]The plaintiff appears to have mistakenly listed the *DICOT* code for this position as 29*1*.477-014 (doc. 16 at 16).

[4]The ALJ did not identify a *DICOT* for the cashier position (Tr. 23), so the undersigned has used the code identified by the vocational expert (Tr. 51).

Moreover, the ALJ does not appear to have considered the limitations in handling and fingering identified by Mr. Zelenka that are inconsistent with the requirements of the plaintiff's past relevant work.  Upon remand, if the ALJ does not give great weight to the findings (including the limitations in sitting, standing, walking, fingering, and handling)  by Mr. Zelenka in the functional capacity evaluation, she should explain the reasons why the limitations were rejected.

***Other Allegations of Error***

In light of the court's recommendation that this matter be remanded for further consideration of the plaintiff's RFC as discussed above, the court need not address the plaintiff's remaining allegations of error. *See Boone v. Barnhart*, 353 F.3d 203, 211 n.19 (3d Cir.2003) (remanding on other grounds and declining to address claimant's additional arguments).  On remand, the ALJ will be able to reconsider and re-evaluate the evidence as part of the reconsideration. *Hancock v. Barnhart*, 206 F. Supp.2d 757, 763–764 n.3 (W.D. Va. 2002) (on remand, the ALJ's prior decision has no preclusive effect as it is vacated and the new hearing is conducted *de novo*).  Accordingly, as part of the overall reconsideration of this claim upon remand, the ALJ should also consider and address the additional allegations of error raised by the plaintiff, including that she failed to consider and resolve evidence related to the plaintiff's use of a cane (doc. 16 at 19-21); erred in discounting the plaintiff's credibility based on a lapse in treatment without considering any explanations from the plaintiff (*id.* at 21-22); and failed to properly consider the opinion of the plaintiff's treating physician, Dr. Davis (*id.* at 23-26).

## **CONCLUSION AND RECOMMENDATION**

Now, therefore, based on the foregoing, it is recommended that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further consideration as discussed above.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald  
United States Magistrate Judge

October 17, 2016  
Greenville, South Carolina